**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | C/A No. 0:20-cv-02596-JMC |
| v. | |
| ABSOLUTE FINANCIAL SERVICES, LLC; ABSOLUTE FINANCIAL SERVICES RECOVERY, LLC; AFSR GLOBAL LOGISTICS, LLC; LASHONE ELAM, A/K/A LASHONE CALDWELL, IN HER INDIVIDUAL AND CORPORATE CAPACITY; AND TALESIA NEELY, IN HER INDIVIDUAL AND CORPORATE CAPACITY, | |
| Defendants. | |

**FIRST INTERIM REPORT OF TEMPORARY RECEIVER**

Deborah B. Barbier, as Temporary Receiver ("Receiver") of Absolute Financial Services, LLC, Absolute Financial Services Recovery, LLC, AFSR Global Logistics, LLC, LaShone Elam, a/k/a LaShone Caldwell in her individual and corporate capacity; and Talesia Neely, in her individual and corporate capacity, files this First Interim Report ("First Report"), documenting the current status of the receivership estate and her activities since her July 21, 2020 appointment as Receiver. (ECF No. 23).

**I. PROCEDURAL BACKGROUND**

On July 13, 2020, the Federal Trade Commission ("FTC") filed a civil complaint in the United States District Court for the District of South Carolina against Absolute Financial Services, LLC, Absolute Financial Services Recovery, LLC, AFSR Global Logistics, LLC, LaShone Elam, a/k/a LaShone Caldwell in her individual and corporate capacity; and Talesia Neely, in her individual and corporate capacity (collectively referred to as the "Receivership Defendants" or

"Defendants"). (ECF No. 2). In its Complaint, the FTC alleges that, since June 2014, the Defendants have been engaged in a scheme to defraud consumers through the collection and process of payments for debts that consumers do not actually owe or that Defendants do not have the authority to collect. *Id.* ¶ 13.

As detailed in the Complaint, Defendants contacted consumers through robocalls, and represented that a lawsuit has or would soon be filed against the consumer regarding a purported outstanding debt. *Id.* ¶ 13, 15. In numerous instances, the Defendants or their agents told consumer that they must call another phone number for more information, and Defendants then provided the consumer with a callback number. *Id.* ¶ 15. When the consumer called back, Defendants' collectors answered the call and represented that they were representatives of a law firm or a mediation company. *Id.* ¶ 18. Defendants then advised the consumers that they could avoid legal action, or often an arrest, by making a debit or credit card payment over the telephone. *Id.* ¶ 19. Defendants are not representatives of a law firm or medication company and did not intend to take any legal action, and, in fact, did not have the authority to take any such action. *Id.* ¶¶ 18, 23. On numerous occasions, the consumers did not owe any debt. *Id.* ¶ 24.

Defendants did not provide: 1) the amount of the debt; 2) the name of the creditor to whom the debt is owed; 3) a statement that unless the consumer disputes the debt, the debt will be assumed valid; 4) a statement that if the consumer disputes all or part of the debt in writing within 30 days, the debt collector will obtain verification of the debt and mail it to the consumer; and 5) a statement that, upon the consumer's written request within the 30-day period, the debt collector will provide the name and address of the original creditor, if different from the current creditor. *Id.* ¶ 26. Many consumers paid the debt because they were afraid of the threatened repercussions of failing to pay, they believed the debt is legitimate, and/or they wanted to end the harassment.

*Id.* ¶ 27. Since 2017, Defendants have collected over $5.2 million from consumers through this unlawful scheme to defraud. *Id.* ¶ 28.

The Complaint alleges that these tactics and misrepresentations to consumers were in violation of the FTC Act and the Fair Debt Collection Practices Act ("FDCPA"). *Id.* ¶ 1. In its Complaint, the FTC seeks a preliminary injunction to avert further consumer injury during the pendency of this action, a permanent injunction to prevent any future violation of the FTC Act and the FDCPA, equitable relief as the Court finds necessary to redress injury to consumers, including disgorgement of all ill-gotten monies, and an award to the FTC for costs in bringing this action. *Id.* at. 16.

In conjunction with filing the Complaint, the FTC also filed an Ex Parte Motion for Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue. (ECF No. 4). On July 17, 2020, the Court granted the motion and entered an Ex Parte Temporary Restraining Order ("TRO") (ECF. No. 18). In the TRO, the Court, inter alia, enjoined Defendants from continuing to operate as alleged in the Complaint. *Id.* at 9-11. The Court also froze the Defendants' assets, *id.* at 12-13, and stated that a temporary receiver would be appointed over the Receivership Defendants by a separate order, *id.* at 19. The Court also outlined the Receiver's duties as temporary receiver for the Receivership Defendants in the TRO. *Id.* at 19-24. Thereafter, on July 21, 2020, the Court appointed Deborah B. Barbier as the temporary receiver over the Receivership Defendants. (ECF No. 23).

## II. IMPLEMENTATION OF THE TEMPORARY RESTRAINING ORDER

### A. Immediate Access

At approximately 2:00pm on July 23, 2020, the Receiver took possession of the Receivership Defendants' business location at 1129 Lancaster Bypass W, Lancaster, South Carolina (the "Business Premises). The Receiver implemented the immediate access at the Business Premises with the assistance of deputies from the York County Sheriff's Department and her counsel, attorneys Regina Hollins Lewis, Nashiba Boyd, and Randi Lynn Roberts, all of Gaffney Lewis LLC.

FTC forensic computer examiners also accompanied the Receiver's counsel to secure the Business Premises. After taking possession of the Business Premises, the Receiver's counsel advised that there were no persons present and no apparent business activity was taking place. Thereafter, the Receiver's counsel conducted an inspection of the Business Premises and directed an inventory of the physical items located therein. The Receiver directed the review of all the paper documents on-site and the photocopying of certain documents relevant to the Receiver's charge. The Receiver's counsel found typed and hand-written scripts throughout the Premises, including on the telemarketers' desks and posted on the walls. The Receiver has caused the locks on the Business Premises to be changed by a locksmith to further effectuate taking possession of the Business Premises. Additionally, the Receiver took possession of all bank checks located on the premises. Simultaneous with the Receiver's investigation at the Business Premises, the FTC conducted their own, independent investigation. Professional forensic computer examiners from the FTC imaged certain files and data maintained on-site, including computer hard drives located at the Business Premises. The FTC investigator also reviewed and made copies of certain records and documents found on-site.

**B. Filing Complaint and Appointment Order in Other Jurisdictions**

Pursuant to 28 U.S. Code § 754, a "receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located." Accordingly, after investigating the potential locations of Receivership property, the Receiver and her counsel have filed copies of the Complaint and the Order of Appointment in the Western District of North Carolina and the Eastern District of Pennsylvania.

**III. ASSETS OF THE ESTATE**

The Receiver continues to gather the financial records of the Defendants. After receiving a copy of the TRO on August 3, 2020, Electronic Merchant Systems ("EMS") determined it had two merchants identified in the TRO. EMS terminated service for those merchants and noted in the merchants' files receipt of the TRO and that no funds nor information was to be released. Based on the limited information obtained to date, there is approximately $68,033.75 in total funds frozen in connection with the pending asset freeze. The investigation into the banking and financial records is ongoing, and the Receiver will direct Receivership Defendants to provide more detailed financial records to assist the investigation and to further assess the value of the estate.

The Receiver searched the York County website for property and vehicles titled to the Defendants. The Receiver has also begun to search for additional assets, which may be in the name of other entities or shell companies. In an attempt to determine the identity of these entities that are related to the Defendants, the Receiver has searched both the South Carolina and North Carolina Secretary of State's websites for entities conducting business in South Carolina and North

Carolina, which had listed one or more of the Defendants as their registered agents. The search revealed numerous entities. (*See* Attachs. A and B)

### IV. THE BUSINESS OF THE RECEIVERSHIP DEFENDANTS

The Receiver has investigated the business operations of the Receivership Defendants to determine whether the enterprise could remain operational without the misrepresentations to consumers regarding the debt and the debt collector. Based on this investigation and an analysis of the business practices of the Receivership Defendants, a preliminary determination has been made that the allegations in the Complaint regarding the business practices of the Receivership Defendants appear to be accurate, and as a result, Receivership Defendants do not appear to be able to operate their business lawfully and profitably.

### V. PENDING LITIGATION

Defendants have not advised the Receiver of any other pending actions against the Receivership Defendants. The Receiver's counsel will conduct an independent search to confirm that there are no additional pending actions, locally or nationally, against the Receivership Defendants.

### VI. FINANCIAL RECORDS OF RECEIVERSHIP DEFENDANT

At this time, the Receiver has been able to obtain only limited financial records of the Receivership Defendants. To obtain additional financial records, the Receiver requests that all financial records under the control of the Defendants be forwarded to the Receiver at the earliest

opportunity. Once the financial records are obtained and reviewed, the Receiver expects to conduct further interviews.

## VII.  TERMINATION OF BUSINESS ACTIVITIES

As indicated above, the Receiver has made a preliminary determination that the Receivership Defendants business cannot operate profitably without misrepresentations to consumers. Consequently, the Receiver has terminated the business operations.

## VIII.  SUPPLEMENTAL REPORTS

The Receiver will file from time to time further reports as her investigation proceeds.

Respectfully submitted,

s/Deborah B. Barbier
Deborah B. Barbier
*Receiver*

This 10th day of August 2020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 10th day of August, 2020, a copy of the foregoing First Interim Report of the Temporary Receiver was served by the Court's ECF system upon all counsel of record.